723 F.2d 766
 33 Fair Empl.Prac.Cas. 955,
33 Empl. Prac. Dec. P 33,989
Linda L. FARMER, (Formerly Linda L. Levescy), Plaintiff-Appellant,
v.
The COLORADO AND SOUTHERN RAILWAY COMPANY and United
Transportation Union Local 201, Defendants-Appellees.
 No. 82-1892.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 28, 1983.
 
 Beverly N. Ballantine, Littleton, Colo., for plaintiff-appellant.
 John L. Pilon, Denver, Colo., for Burlington Northern R. Co., defendant-appellee.
 Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This is a case of alleged sex discrimination brought under Title VII by a discharged employee. After a trial to the court, judgment was entered in favor of the defendant-employer, The Colorado & Southern Railway Company. The plaintiff, Linda Farmer, appeals. We affirm.
 
 
 2
 On May 22, 1978, Linda Farmer, then nineteen years of age, was hired by The Colorado & Southern Railway Company as a student "switchman-brakeman"[1] at Trinidad, Colorado. She was its first female "switchman-brakeman." Ms. Farmer passed a written examination and successfully completed the physical part of the yard instruction given to trainees. As the next step of the training process, she made a series of six student runs on trains with a full crew. She completed these student runs on June 6, 1978, and began a sixty-day probationary period. Brakemen-switchmen must pass this probationary period before they can receive the protection of a union contract. The employer retains the right to dismiss an employee for any reason, and the employee does not have the right to an investigation into the reasons for the dismissal. In the trial, this probationary period was variously described as "a weeding out period" to permit the railroad to get rid of any "bad apples." The Local Chairman of the United Transportation Union Local 201 testified that in the past there had been several instances of employees being discharged before the end of this sixty-day period.
 
 
 3
 Ms. Farmer was discharged from her probationary employment on July 14, 1978, because of her alleged inability to perform the duties required of a switchperson-brakeperson, namely, she was unable to "throw" and "line" switches on several occasions.
 
 
 4
 Ms. Farmer instituted the present action against The Colorado & Southern Railway Company, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, et seq., claiming that she was discharged because of her gender. At the conclusion of the plaintiff's evidence, the district court denied the defendant's motion to dismiss, ruling that the plaintiff had made out a prima facie case of employment discrimination based on gender. The railway then called six witnesses. No rebuttal testimony was offered.
 
 
 5
 In her findings of facts and conclusions of law, the district judge, the Honorable Zita L. Weinshienk, followed the allocation of burdens and order of proof in a Title VII case as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In particular, Judge Weinshienk ruled that the defendant had articulated a legitimate, nondiscriminatory reason for terminating Ms. Farmer's probationary employment, namely, her repeated inability to throw and line switches.[2] The district judge further found that the record, considered as a whole, did not establish that the reason given by the employer was a pretext for gender discrimination, i.e., that a male, situated as was Ms. Farmer, would not have been discharged and that she was therefore given disparate treatment. We believe the findings thus made are amply supported by the record, and should therefore not be disturbed by us on appeal. Certainly they are not "clearly erroneous" within the meaning of F.R.Civ.P. 52(a). An appellate court should not overturn a trial court's finding of fact unless it is definitely and firmly convinced that a mistake has been made. Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). We are not convinced that such a mistake occurred here.
 
 
 6
 In this court, as in the trial court, much of the focus is on Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Ms. Farmer asserts that the district judge misunderstood and misapplied Burdine. We think not. That part of Burdine which has particular present pertinency reads as follows:
 
 
 7
 The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See [Board of Trustees of Keene State College v.] Sweeney, supra [439 U.S. 24], at 25 [99 S.Ct. 295 at 296, 58 L.Ed.2d 216 (1978) ]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.
 
 
 8
 The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. See McDonnell Douglas, 411 U.S., at 804-805 [93 S.Ct. at 1825-1826].
 
 
 9
 450 U.S. at 254-56, 101 S.Ct. at 1094-95.
 
 
 10
 In our view, the district judge followed the mandate of Burdine. After finding that Ms. Farmer had proven a prima facie case of gender discrimination, she found that the evidence adduced by the defendant articulated a legitimate, nondiscriminatory reason for Ms. Farmer's discharge, i.e., her inability to do the work of a switchperson. As previously stated, the record supports such a finding. In this regard, there appears to us to be the suggestion that, under Burdine, not only must the defendant in a Title VII case offer a legitimate, nondiscriminatory reason for the action taken, but the employer must also show that he was actually motivated by the proffered reason. Such is not our understanding of Burdine. In fact, Burdine, in our view, stands for the opposite. Burdine, states that the "defendant need not persuade the court that it was actually motivated by the proffered reasons." 450 U.S. at 254, 101 S.Ct. at 1094.
 
 
 11
 Also in line with Burdine, the district judge found that, based on the entire evidentiary record, Ms. Farmer failed to preponderate on the question of whether the reason offered by the defendant was pretextual. That finding also finds support in the record. The overall "factual inquiry" in a Title VII case is "whether the defendant intentionally discriminated against the plaintiff." United States Postal Serv. Bd. v. Aikens, --- U.S. ----, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), quoting Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. Ms. Farmer was by no means the first probationary employee whose employment was terminated.
 
 
 12
 Judgment affirmed.
 
 
 
 [1]
 A switchman-brakeman is responsible for assembling the railroad cars and throwing the necessary switches so that the trains can pass. A switchman must be able to operate all the different kinds of switches, which include a ground or flopover switch, a spring switch, a power switch, and a standing switch
 
 
 [2]
 The record reflects that Ms. Farmer had difficulty throwing and lining switches several times during her student runs. The most damaging testimony, however, was that given by defendant's witness, Larry Lee Olin, an engineer for the railroad, concerning a trip the plaintiff made to Pueblo during her probationary period. Mr. Olin testified that Ms. Farmer was unable to throw a standing mainline switch at the Lynn siding and that he had to get off the engine and throw the switch himself. On the return trip, Ms. Farmer was unable to throw a flopover switch in the Pueblo yard and the brakeman, Mark Snyder, had to throw it for her