Peter G. **MASTRANGELO**, Plaintiff,

v.

**KIDDER, PEABODY & CO., INC.**, Defendant.

No. 88 Civ. 3302 (RPP).

United States District Court,
S.D. New York.

Oct. 19, 1989.

Peter C. Salerno, Kidder, Peabody & Co., New York City, for defendant.

Seham Klein & Zelman by Martin C. Seham (C. Sue Barnett, of counsel), New York City, for plaintiff.

ROBERT P. PATTERSON, Jr., District Judge.

This case arises out of defendant's decision to replace plaintiff as the head of its Systems Division, plaintiff's concurrent acceptance of defendant's offer of a consultancy position, and defendant's termination of that consultancy. Plaintiff claims that these acts were the result of age discrimination against him, and that the termination of the consultancy was also a breach of contract.

Discovery having been taken by both parties, defendant now moves for summary judgement dismissing plaintiff's complaint in its entirety. Plaintiff cross-moves for partial summary judgment on the issue of liability on his age discrimination claims.

This Court's jurisdiction is predicated on diversity of citizenship. 28 U.S.C. § 1332. The age discrimination claims are asserted under New York Executive Law § 296(1)(a). No claims arising under federal law are asserted.

## I. FACTS

Peter Mastrangelo ("Mastrangelo") was the head of the Systems Division of Kidder, Peabody & Co., Inc. ("Kidder") from 1966 until 1987, when it was determined that he would be replaced. At that time, Mastrangelo was 56 years old. He was subsequently replaced by Robert S. McKinney ("McKinney"), who is ten years younger than Mastrangelo.

Mastrangelo claims his performance at Kidder was superlative, and that Kidder only replaced him because of his age. Kidder claims that he was replaced because, at least at the end, his work was inadequate.

It is undisputed that Mastrangelo joined Kidder in 1966 as Manager of Data Processing, that he was made an Assistant Vice President in 1969, a Vice President in 1970, and a shareholder in 1972. When he started in 1966, he earned $15,000 and by 1986 he earned $100,000 in salary with a $175,000 bonus. During the period he worked at Kidder, the Systems Division grew substantially and implemented major and minor changes on an ongoing basis. At a shareholder's meeting held on January 31, 1987, the performance of the Systems Division was reported positively and various improvements were noted.

Two studies of the Systems Division were commissioned by Kidder and conducted by outside agencies, one before the decision to replace Mastrangelo was made and one after he had been replaced. The first concluded, *inter alia*, that Kidder did not always spend as much on Systems as similar firms, and recommended changes. The second reported that "Systems staff has made significant progress in developing and implementing many of the needed systems with below industry average systems investments." This latter report also noted that Systems was experiencing problems, including "inadequate client relations," and "growing pains." [1]

It is also undisputed that some of Systems' "clients" within Kidder occasionally did not find the division responsive to their needs and occasionally complained about Mastrangelo's performance to his superiors or otherwise indicated a lack of confidence in him. Specifically, the head of operations and the head of the fixed income securities department at Kidder complained of poor performance by the Systems Division.

For approximately fifteen years, until May or June of 1987, Mastrangelo reported to John T. Roche ("Roche"), who was Kidder's vice chairman and chief operating officer and president of the holding company which owned Kidder. At some point during the first half of 1987, Roche concluded that a replacement for Mastrangelo should be sought. Although by May of 1987 search firms had been contacted to find a

---

1. In this context, "clients" refers to the operating divisions of the defendant.

replacement for Mastrangelo, Roche had not yet notified him that he would be replaced. In early June, 1987, Roche informed Mastrangelo that he would be replaced as the Director of Systems when a new Director of Systems was found. Kidder claims Roche's decision was based on the complaints users of the Systems Division were making about the division, the study recommending changes in the division, and his lack of confidence in Mastrangelo's leadership, management, and technical ability.

During this period, Kidder was undergoing changes as a result of having been purchased by General Electric Financial Services ("General Electric"). In fact General Electric had decided to terminate Roche. On May 15, 1987 Charles V. Sheehan ("Sheehan") became Kidder's chief financial and administrative officer, and at about that time the systems division began reporting to him. After discussing Mastrangelo's situation with Roche and others, Sheehan agreed Mastrangelo should be replaced. Sheehan testified at his deposition that at the time he was not aware of Mastrangelo's age nor was he aware that the candidates to replace Mastrangelo were younger. Sheehan stated his decision was based entirely on reports of unsatisfactory performance.

Mastrangelo claims that, at the meeting in early June, Roche made thinly-veiled references to his age when explaining the decision to replace him. Roche allegedly told Mastrangelo that Kidder wanted to embark on a five-to-ten year project involving tens of millions of dollars to upgrade and enlarge the Systems Division, that Kidder wanted someone "younger", "more aggressive", "more state of the art" and "at the cutting edge" to lead the project, and that Mastrangelo might want to take life easier and retire before the completion of the project.[2] Mastrangelo also claims that at no time did Roche say the decision to replace him was based on inadequate per-

formance or complaints of inadequate performance.

Mastrangelo also points to a search memorandum prepared by Kidder, according to which the new head of Systems was to have a "vision to develop and implement a systems game plan over a 3–5 year time horizon," as well as "pace and urgency." The memorandum, however, did not specify age requirements for the job, nor did it explicitly refer to a need for a young person.

At the same meeting at which he was notified that he was to be replaced, Mastrangelo was told that Kidder wanted him to act as a consultant after his replacement was found. Mastrangelo alleges that Roche told him he could stay on as a consultant as long as he wished. Roche outlined the terms of the consultancy and an informal memorandum was drafted by Edwin A. Weihenmayer, then Kidder's vice president in charge of human resources, embodying the terms of Mastrangelo's future arrangements with the firm. Sheehan approved the substantive terms of the document. The document reads as follows:

"June 9, 1987

To: Peter G. Mastrangelo
Re: Future Employment Arrangements
The arrangements detailed below are based on the premise that you will be managing Systems for most of 1987, until a new Director of Systems is named, and that you will then operate in a consultancy role during the transition:

1) You will be guaranteed $275,000 for 1987.
2) During the consultancy period, you can expect to receive a minimum of $200,000 annually.
3) If you are involuntarily separated (other than "for cause") prior to 12/31/89, you will be paid $200,000.
4) If involuntarily separated at any time before age 65, you will be eligible for Early Retirement under KP's Early Retirement guidelines.

---

2. Mastrangelo could not recall whether Roche used the word "younger", but said that was the "drift" of the words Roche used. Roche stated he did not recall using the specific words

"young" or "younger" or suggesting that Mastrangelo might want to take life easier or retire before the completion of the project.

These arrangements are intended to maximize your contributions during the management transition while at the same time affording you certain protections designed to increase your overall comfort level.

Please acknowledge your understanding of these arrangements by signing the memo below.

s/

E.A. Weihenmayer

s/ _____

Peter G. Mastrangelo

cc: S. Cathcart

   C. Sheehan

[Mastrangelo's handwriting follows:] Signed with the informal understanding that I will be able to maintain my KP share ownership thru the duration of my active employment, recognizing that this understanding expires 12/31/89"

On September 14, 1987, Robert S. McKinney ("McKinney") joined Kidder as Director–Management Information Systems, replacing Mastrangelo. McKinney was 46, ten years younger than Mastrangelo. Sheehan told McKinney to utilize Mastrangelo as a consultant in the transition in any manner he thought would be helpful, but McKinney found him to be unhelpful, and so reported to Sheehan.

In October of 1987, the stock market crashed, prompting Kidder to lay off 1,000 employees. Mastrangelo was among those terminated during this period. The reason given for his termination was that he was not making any significant contribution to the firm. Sheehan decided to make the termination of Mastrangelo's consultancy effective at the end of 1987, and Mastrangelo was paid the $200,000 payment for involuntary separation provided for in ¶ (3) of the June 9, 1989 agreement. No replacement was hired for Mastrangelo's consultancy position.

## II. SUMMARY JUDGMENT

Summary judgment under Fed.R.Civ.P. 56 will be granted only if the movant shows that (1) there is no genuine issue as to any material fact, and (2) movant is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the "fundamental maxim" is that the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987) (quoting *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). "Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.* at 57. If, however, taking the record as a whole, a rational trier of fact could not find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

### A. *The Breach of Contract Claim*

Defendant moves for summary judgment on plaintiff's claim that defendant breached the agreement to continue him as a consultant. Plaintiff argues that there are triable issues of fact precluding the granting of summary judgment. Having found no genuine issues of material fact, this Court grants defendant's motion.

Under New York law, employment is at-will unless a contract specifies a definite period of employment, and an employer may discharge an at-will employee at any time for any reason except a reason prohibited by law. *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y. S.2d 209, 506 N.E.2d 919 (1987); *O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 725, 492 N.Y.S.2d 9, 481 N.E.2d 549 (1985); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Any limitation on the employer's right to terminate must be an "express limitation". As noted recently by the Second Circuit,

absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual's con-

tract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.

*Wright v. Cayan,* 817 F.2d 999, 1003 (2d Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987) (quoting *Murphy v. American Home Products Corp.,* 58 N.Y.2d at 305, 461 N.Y.S.2d 232, 448 N.E.2d 86).

■ Plaintiff claims that the June 9 agreement created a contract obligating Kidder to employ him through December 31, 1989. Plaintiff claims that, under the agreement, he was guaranteed $400,000 in consulting fees for the years 1988 and 1989. However, Mastrangelo's assertions are contrary to the clear and unambiguous terms of the contract. By its terms, the agreement "guaranteed" employment only through 1987. While it provided for an annual rate of pay should the consultancy continue thereafter, the agreement cannot be read as guaranteeing that the consultancy would last a definite period of time. Rather, the agreement expressly provided that if Mastrangelo was "involuntarily separated" prior to the end of 1989, he was to receive $200,000, which amount has been paid to him by defendant. Therefore, the contract does not contain an "express limitation" on Kidder's right to terminate at will, and Mastrangelo's termination was not a breach of the June 9 agreement.[3]

Plaintiff argues that statements made to him by Roche before he signed the June 9 agreement limited Kidder's right to fire him. Roche, the outgoing Kidder president, allegedly informed plaintiff orally prior to June 9 that his employment was guaranteed through 1989 and that he could continue to work for Kidder "as long as he

wished." Defendant argues that Roche's alleged representations are barred by the parol evidence rule.

■ The parol evidence rule is a rule of substantive law in New York, under which the clear and unambiguous terms of a valid, integrated written agreement cannot be contradicted or varied by prior or contemporaneous extrinsic evidence. *Happy Dack Trading Co. v. Agro–Industries, Inc.,* 602 F.Supp. 986 (S.D.N.Y.1984). As noted above, the terms of the June 9 agreement are clear and unambiguous. Plaintiff claims that the agreement can be read as guaranteeing his employment through 1989 because it (1) refers to an annual rate of pay, (2) refers to involuntary separation prior to December 31, 1989, and (3) includes Mastrangelo's handwritten memo that he claims expressed his understanding that his employment was to continue through 1989.[4] However, this Court finds that no reasonable jury could read the agreement as ambiguous in the ways plaintiff suggests. Instead, the agreement can only be read as one that contemplates full payment for employment through 1989 but which expressly provides for the possibility of termination, with or without cause, at any time, including a $200,000 payment should the termination be without cause. Plaintiff has received those payments.

Furthermore, the agreement appears complete on its face and is therefore integrated as a matter of law. *Battery S.S. Corp. v. Refineria Panama, S.A.,* 513 F.2d 735, 738 n. 3 (2d Cir.1975); *Happy Dack Trading Co. v. Agro–Industries, Inc., supra.* It includes provisions covering the type of employment, the length of the em-

---

**3.** Plaintiff argues that his handwritten addition to the contract demonstrates that the agreement guaranteed his employment through 12/31/89. However, the only reasonable interpretation of that language is that it provides that it allows Mastrangelo to retain his stock as long as he is actively employed, but not later than the end of 1989. As Mastrangelo stated at his deposition, the purpose of the language was to allow him to retain his stock as an incentive while he worked for the firm, but if he was still actively employed at the end of 1989, Kidder could force him to sell.

**4.** Plaintiff also argues that the agreement can be read to provide a guarantee of $275,000 for 1987 and an additional $200,000 consultancy fee for 1987, and is ambiguous for that reason. However, in the Court's judgment a reasonable jury could not read the agreement as plaintiff reads it. Nothing in the agreement refers to an additional payment for 1987, although the consultancy could, and in fact did, begin in 1987. The $200,000 specified in ¶ (2) of the agreement is clearly an annual salary figure and not denominated for 1987. Mastrangelo has received the $200,000 provided for in ¶ (3).

ployment, the compensation, and the possibility of involuntary separation before the end of 1989.

■ Plaintiff, as an alternative argument, claims that he relied on defendant's alleged oral promise to compensate him through 1989 "by agreeing to remain in defendant's employ through the end of 1989," or by not seeking other employment before the stock market crashed in October, when his employment opportunities became less plentiful. No New York cases have gone this far. New York has only recognized exceptions to the at-will doctrine when the employee was induced to leave prior employment in reliance on a promise not to terminate without just cause, or when the promise not to terminate is incorporated in an employment application or employment manual. *D'Avino v. Trachtenberg*, 539 N.Y.S.2d 755 (2d Dep't 1989); *Hill v. Westchester Aeronautical Corp.*, 112 A.D.2d 977, 492 N.Y.S.2d 789 (2d Dep't 1985). None of those circumstances is present here.

Accordingly, plaintiff is barred from varying the plain terms of the agreement with the parol evidence of Roche's statements. No express limitation on Kidder's right to terminate Mastrangelo at will being evident,[5] Kidder's motion for summary judgment on the breach of contract claim is granted.

### B. *The Age Discrimination Claims*

Defendant also moves for summary judgement with respect to plaintiff's age discrimination claims. Plaintiff cross-moves for summary judgment as to liability on those claims.

Plaintiff's age discrimination claims are asserted solely under New York Executive Law § 296(1)(a) (McKinney 1982), which provides:

It shall be an unlawful discriminatory practice:

(a) For an employer ..., because of the age ... of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

In applying this law, New York courts have looked to federal cases interpreting federal discrimination statutes, including the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621–34 (1976 & Supp. II), for purposes of determining the elements of a *prima facie* case and the shifting burdens of proof in discrimination cases. *See e.g., Miller Brewing Co. v. State Division of Human Rights*, 66 N.Y.2d 937, 498 N.Y. S.2d 776, 489 N.E.2d 745, (1985) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Ioele v. Alden Press, Inc.*, 145 A.D.2d 29, 536 N.Y.S.2d 1000 (1st Dep't 1989).

■ Plaintiff bears the initial burden of stating a *prima facie* case, and retains the burden throughout of "proving that the decision would not have been made 'but for employer's motive to discriminate against him because of his age.' " *Ioele*, 145 A.D.2d at 35, 536 N.Y.S.2d at 1004 (quoting *Loeb v. Textron*, 600 F.2d 1003 (1st Cir. 1979)). Plaintiff does not have to show that his age was the principal factor in the defendant's decision, but only that his age was a factor that made a difference. *Lowe v. Commack Union Free School District*, 886 F.2d 1364 (2d Cir.1989) (citing *Paolillo v. Dresser Industries, Inc.*, 865 F.2d 37, 40 (2d Cir.1989)).

■ Once a *prima facie* case has been established, the burden shifts to the employer to rebut it with a showing of legitimate, independent, and nondiscriminatory

---

5. This case is distinguishable from *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847 (2d Cir. 1985), cited by plaintiff in support of his argument that his employment was not terminable at will. There, no written employment contract existed. The court found an express limitation of the employer's right to terminate at will in an operations manual that the employer, in response to requests for written employment contracts, told the employees set forth the terms and conditions of their employment. Here, plaintiff seeks to go beyond the written employment agreement to rely on oral statements that contradict that agreement.

reasons to support the employment decision. *Miller Brewing Co.*, 498 N.Y.S.2d at 777, 489 N.E.2d at 746 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If such reasons are set forth, the burden then shifts to the plaintiff to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* 498 N.Y.S.2d at 778, 489 N.E.2d 747 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093).

A *prima facie* case of age discrimination is established if the plaintiff shows:

(1) he was in the protected age group; [6]

(2) he was terminated;

(3) he was sufficiently qualified to continue holding his position;

(4) his position was subsequently filled by a younger person or held open for a younger person.

*Ioele*, 536 N.Y.S.2d at 1003–4. The plaintiff's burden in this regard is minimal. *See Meiri v. Dacon*, 759 F.2d 989, 996 n. 10 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (noting *"de minimis* nature of a plaintiff's burden of proof at the *prima facie* stage.").

Mastrangelo has not made out a *prima facie* case with respect to the termination of the consultancy, as there is no evidence that he was replaced. The undisputed evidence is that Kidder eliminated the position entirely as part of a reduction in force. Second Circuit decisions make clear that, in the absence of direct, statistical, or strong circumstantial proof of discrimination, a *prima facie* case is not established unless the complainant was replaced by a younger person. *See Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914 (2d Cir.1981); *but see Arnell v. Pan American World Airways*, 41 Empl.Prac.Dec. (CCH) ¶ 36,506, 1986 WL 11455 (S.D.N.Y.1986). Mastrangelo has not offered such proof of discrimination in this case. Accordingly,

plaintiff's age discrimination claim with respect to the termination of his consultancy must be dismissed.

Defendant also argues that plaintiff has not established a *prima facie* case with respect to his replacement as head of Systems, because (1) he was not terminated but instead voluntarily agreed to act as a consultant; (2) he was not qualified to head the systems division in the future due to significant changes that were to be made and the dissatisfaction expressed with respect to his past performance; and (3) he was not replaced by someone sufficiently younger than he to allow an inference of discrimination.

Drawing all reasonable inferences in his favor, this Court finds that plaintiff has met his burden of establishing a *prima facie* case of age discrimination in the decision to replace him as head of Systems, at least to an extent sufficient to withstand a motion for summary judgment. He has produced evidence of his age and that of the person who replaced him; that he did not voluntarily step down as head of Systems; and that he was qualified to continue as the head of Systems.

The burden thus shifts to defendant to articulate by competent evidence a legitimate, non-discriminatory reason for that decision, which burden Kidder has met here. It need not prove the absence of discrimination, but only state a legitimate reason for the action taken. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). Plaintiffs have produced evidence that Roche and Sheehan believed Mastrangelo was not performing well enough to meet their expectations, and that certain department heads reported to Roche and Sheehan that they were dissatisfied with the performance of Systems while Mastrangelo was heading it.

The burden then falls on plaintiff to establish that defendant's asserted legit-

---

**6.** Unlike the federal statute, the New York statute does not define a protected age group, and therefore this requirement is automatically met. New York Executive Law § 296(3–a)(a) (McKin-

ney Supp.1989) provides that individuals over the age of 18 are protected. Mastrangelo's age of 56 would put him in the protected age group even under the federal statute.

imate reasons are merely a pretext for discrimination. Plaintiff has sufficiently carried this burden to withstand Kidder's motion for summary judgement, but has not so overwhelmed Kidder's evidence that he may be awarded summary judgment himself. Rather, issues of fact remain that must be presented to the trier of fact for determination.

Specifically, Mastrangelo has in his favor statements made by Roche that a trier of fact might conclude were allusions to Mastrangelo's age. The Court recognizes in this regard that it is unlikely that an employer would directly state that the employee was being fired because of his age. Thus, lack of such specific statements in the record does not preclude a jury from finding that evidence of age discrimination is hidden in less explicit statements. For example, Roche admitted that, while he could not recall whether he told Mastrangelo that Kidder needed someone who was more "state of the art," it was "probably something I would have said." Roche also stated Kidder needed someone "at the cutting edge," and "who could embrace new technology, understood it and hired the right people with that vision of what was going to happen." Sheehan referred to Mastrangelo's lack of "vision of where we needed to take this systems organization over the next three to five years." Weihenmayer said that Mastrangelo's successor "had to have the intensity and pace fitting for this immense job," qualities which Mastrangelo, by implication, was not considered to have. Furthermore, the search memorandum for Mastrangelo' successor expressed the need for someone with "vision", who was able to "communicate" and "relate", and who would exhibit the "pace and urgency" required.

While it is entirely possible that Mastrangelo was deficient in the ways these statements suggest, it is also quite possible that in a youth-oriented investment banking firm these statements are mere euphemisms concealing a point of view from which any person of Mastrangelo's age would be considered deficient. The resolution of that question, however, along with the underlying issues of intent and state of mind, is a task for the jury, and not for the court.

Plaintiff has sufficiently demonstrated that a trier of fact could reasonably conclude that Kidder's claims of inadequate performance are not credible, given the contrary evidence of adequate performance, implied by (1) the conclusions of the two studies of the Systems Division partly attributing its failures to an inadequate budget, and (2) the raises and bonuses awarded to Mastrangelo.

Additionally, the evidence submitted by the parties in connection with their motions is not conclusive as to who actually made the decision to replace Mastrangelo. Because the resolution of that question is likely to be important in determining whether the decision was based to an impermissible extent on considerations of age, summary judgment for either party would be premature.

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

(1) plaintiff's motion for partial summary judgment is denied;

(2) defendant's motion for summary judgment is denied with respect to plaintiff's claim of age discrimination in the decision to replace him as head of Systems;

(3) defendant's motion for summary judgment is granted with respect to plaintiff's breach of contract claims;

(4) defendant's motion for summary judgment is also granted with respect to the claim of age discrimination in the decision to terminate plaintiff's consultancy.

SO ORDERED.