Marilyn **MELNYK,** Plaintiff,

v.

**ADRIA LABORATORIES, A DIVISION OF ERBAMONT INC., and Erbamont Inc.,** Defendants.

No. 88–CV–1245S.

United States District Court, W.D. New York.

July 2, 1992.

**304**

Thomas S. Gill, Buffalo, N.Y., for plaintiff.

Robert J. Lane, Jr., Buffalo, N.Y., for defendants.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Before this Court is defendants' motion and plaintiff's cross motion for summary judgment pursuant to Fed.R.Civ.P. 56.

The plaintiff, Marilyn Melnyk ("plaintiff") has filed a three count Complaint alleging wrongful discharge stemming from breach of contract, unlawful sex discrimination and unlawful age discrimination.

This Court has jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332 and the federal claims raised pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a). New York law controls with regard to the issues outside the scope of the federal statutes.

This lawsuit arises out of the discharge of plaintiff by her employer Adria Laboratories, a division of Erbamont Inc. ("Adria" or "defendant"). In 1984 plaintiff left her position with Roswell Park Memorial Institute ("Roswell") and commenced employment with defendant as a sales representative. In her complaint, plaintiff alleges that defendant's "Employee Handbook" (the "Handbook") created an employment contract which established conditions for discharge and that she relied on the representations in the "Handbook" in deciding to accept the position with Adria. Plaintiff also alleges that defendant breached this employment contract by dismissing her on November 17, 1987, in a manner inconsistent with the procedures outlined in the "Handbook." Furthermore, plaintiff contends that unlike male employees charged with similar offenses, she was not given a full opportunity to challenge the charges against her and that this differential treatment represents unlawful sex discrimination, in violation of 42 U.S.C. § 2000e. Plaintiff also contends that the decision to terminate her was unlawfully based upon her age, in violation of 29 U.S.C. § 623(a)(1). Finally, plaintiff alleges that Adria's decision to terminate her based upon age and sex violated § 296 of the Executive Law of the State of New York. On these claims for wrongful discharge, plaintiff seeks damages in excess of $336,000.

Defendant has moved for summary judgment arguing that plaintiff was an employee at will and, under New York common law was subject to discharge for any reason or no reason. Notwithstanding its right to discharge plaintiff at will, defendant claims that plaintiff's discharge resulted after an internal investigation revealed that she had falsified company records and violated Adria's code of ethics. Finally, defendant contends that plaintiff has failed to provide sufficient evidence that the circumstances of her discharge created any possible inference of discrimination.

Opposing defendant's summary judgment motion, plaintiff argues that issues of fact exist as to whether an employment contract was established between the parties. Furthermore, plaintiff has filed a cross motion for summary judgment with respect to her sex and age discrimination claims.

In support of its summary judgment motion, defendant has submitted a legal memorandum ("d.memo"), a reply memorandum ("d.reply"), a supplemental memorandum ("d.supp."), an affidavit and reply affidavit of Adria's National Accounts Manager Thomas J. Komenda ("Komenda" and "RKomenda," respectively), a reply affidavit of Adria's Vice-president of Sales James R. Mitro ("Mitro"), an affidavit of defense counsel Robert Lane with exhibits ("Lane") and a statement and supplemental statement of undisputed facts.

In support of her cross motion for summary judgment, plaintiff has submitted a memorandum of law ("pl.memo"), a reply memorandum ("pl.reply"), a supplemental memorandum ("pl.supp."), an affidavit of Marilyn Melnyk with exhibits ("Melnyk"), an affidavit of plaintiff's counsel Thomas Gill with exhibits ("Gill"), a memorandum in support of a motion to strike ("pl.strike") and a statement of undisputed facts.

This Court has considered all of these submissions and the oral argument held on March 21, 1991.

For the reasons discussed below, this Court hereby GRANTS defendant's motion for summary judgment on plaintiff's breach of employment contract claim and age discrimination under the ADEA and New York Executive Law § 296 claims; hereby DENIES defendant's motion for summary judgment on plaintiff's sex discrimination claim under Title VII and § 296 of New York's Executive Law. Furthermore, this Court hereby DENIES plaintiff's cross-motions on the same.

## FACTS

Marilyn Melnyk was hired by Adria as an oncology sales representative on December 3, 1984 (Melnyk ¶ 3; Komenda ¶ 3). She began work while on sabbatical from Roswell (pl.memo p. 11; Melnyk ¶ 5). It was only after having worked at Adria for a few months that she resigned from her position at Roswell (Melnyk ¶ 7). Plaintiff asserts that in making this decision she relied upon statements in the Handbook. She interpreted the statements at E–2–F and E–3–F to mean that her employment would be terminated on the first occurrence of a major offense, but not for minor offenses such as absence, tardiness, or leaving work early. (Melnyk ¶ 8; pl.memo p. 11–12; Lane exh. F). Although plaintiff acknowledges she was an employee at will, she contends that these provisions limited defendant's right to terminate her at will (pl.memo p. 36).

The only written agreement signed by plaintiff was Adria's Pledge of Ethics (Komenda ¶ 4; Melnyk ¶ 9; Lane exh A). Adria uses this document to advise its sales representatives of their employment and ethical responsibilities that require them to act honestly and ethically, to handle Adria's drugs in a careful and ethical manner, to report sales calls honestly, and to put in a full day's work on every business day. Additionally, the pledge indicates that a violation of any of its provisions is grounds for immediate termination of employment (Lane exh. A; Mitro ¶ 18–20; Komenda ¶ 4; RKomenda ¶ 12–14).

During the summer of 1987, Thomas Komenda, District Manager in Adria's oncology sales division and plaintiff's direct supervisor, while reviewing Melnyk's phone call expense reimbursements, noticed that she was making a large number of phone calls from her home during business hours and that many of these calls were personal in nature (Komenda ¶ 1–2). This conduct violated Adria's Pledge of Ethics that requires sales representatives to be in the field during business hours. Komenda claims to have previously warned plaintiff that she was violating Adria policy by not conducting her business in the field. (Komenda ¶ 6–7; Lane exh A). However, plaintiff asserts that Komenda never warned her that such conduct was impermissible; to the contrary, she claims he was aware of such conduct for the entire three years she had worked at Adria (Melnyk ¶ 20, 30).

Komenda discussed the matter with his supervisor James Mitro, Adria's Director of Oncology Sales at the time, and Steven Wolfe, Adria's Employee Relations Manager. It was decided that Komenda would secretly observe plaintiff's work activities

on October 5 and 6, 1987. On October 5, 1987, Komenda posted himself outside plaintiff's house and observed that she did not leave her house before 1:00 p.m., at which time she temporarily exited to place something in a visitor's car parked in front of the house and then returned inside. Following lunch, Komenda's surveillance resumed from 2:30 p.m.—5:00 p.m. No further activity was observed. On the following day, October 6, 1987, Komeda observed that plaintiff did not leave her house until between 9:15 and 9:20 a.m. (Komenda ¶ 9–12; Lane exh B). Plaintiff does not contend that she left her home at times other than those observed by Komenda. (Melnyk ¶ 65).

Komenda, Wolfe, and Mitro discussed these observations and agreed that confirmation had been obtained, establishing that Melnyk was not in the field during regular business hours. Mitro then forwarded this information to William Rohn, the Director of Adria's Oncology Products Group, and William Pettit, Adria's Vice President of Human Resources. (Lane exh B). On October 18, 1987, Rohn, in consultation with Petit, made the decision to terminate Melnyk's employment and informed Mitro of the decision. Mitro then instructed Wolfe and Komenda to meet with plaintiff and fire her. (Lane exh B). Such meeting was held on November 17, 1987, and plaintiff was informed that she was being terminated for failure to go to work in her territory during regular business hours and for failing to report that absence to her district manager as required by the Pledge of Ethics. (Komenda ¶ 15–16). Because she was given no opportunity to contest the charges against her, plaintiff maintains that she chose to resign rather than be fired. Moreover, plaintiff contends that were it not for the fact that she was summarily discharged, she could have produced evidence to prove that she had not been involved in any misconduct (Melnyk ¶ 70).

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under this rule, "the moving party has the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Furthermore, this Court emphasizes that in considering a motion for summary judgment the evidence and the inferences to be drawn therefrom must be "viewed in the light most favorable to the party opposing the motion." *Id.*, at 158–159, 90 S.Ct. at 1609; *Arledge v. Stratmar Systems, Inc.*, 948 F.2d 845, 847 (2d Cir.1991). If the moving party has made a sufficient showing, the non-moving party then must present evidence to show "that a reasonable jury could return a verdict" in its favor to defeat the motion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, a motion for summary judgment will not be defeated merely on the basis of conjecture or surmise. *Bryant v. Maffucci*, 923 F.2d 979, 985 (2d Cir.) *cert. denied,* — U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Under the standards articulated above, the function of the district court in considering a motion for summary judgment is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991).

## DISCUSSION

### A. *Plaintiff's Motion to Strike*

Initially, plaintiff moves to strike paragraphs 3–5, 8, 12, 13 and 15 of the affidavit of Robert Lane, Esq., arguing that the statements in these paragraphs are not based upon personal knowledge and therefore fail to comply with Fed.R.Civ.P. 56(e) (pl.strike p. 1–2). Although Lane lacks personal knowledge of the facts in these paragraphs, each of the challenged paragraphs, except for paragraph three, cites an attached exhibit or the Komenda affidavit. Furthermore, the information in paragraph three is provided in paragraph four of the Komenda affidavit. Finally,

Mitro has submitted an affidavit in response to this motion that provides additional foundation for the facts asserted in Lane's affidavit (Mitro ¶¶ 17–24). As such, the challenged paragraphs of the Lane affidavit add no new material information, but are mere reaffirmations of information already in the record. Consequently, this Court views the Lane affidavit merely as a "road map," a procedure this Court has utilized before, with respect to the documentary evidence in the record, and therefore finds no personal knowledge deficiency. *See Maier–Schule GMC, Inc. v. General Motors Corp.*, 780 F.Supp 984, 988 (W.D.N.Y.1991).

Accordingly, this Court denies plaintiff's motion to strike.

### B. *Plaintiff's Breach of Employment Contract Claim*

Defendant contends that plaintiff's breach of employment contract claim must fail for three reasons. The first is that plaintiff's employment was one at will which under New York common law is terminable at any time for any reason. Defendant, noting that by plaintiff's own admission her employment was at will, argues that no agreement exists which limits defendant's right to terminate her employment at will. The second reason is that even if plaintiff had an employment contract, her termination was implemented in full accordance with Adria's termination policies. The third reason concerns plaintiff's claim for wrongful discharge. Defendant points out that New York courts have refused to recognize a cause of action for wrongful discharge when an employee is terminable for any reason.

In response, plaintiff concedes that she was an employee at will. However, she asserts that defendant had specifically promised her that if accused of misconduct she would not be terminated for her first minor offense. This guarantee, plaintiff claims, is found in Adria's Handbook. Based upon this and other guarantees contained therein, plaintiff asserts that Adria modified its right to terminate her at any time for any or no reason. Furthermore,

plaintiff alleges that she relied on these provisions in accepting the position as sales representative and leaving her position with Roswell.

### 1. The New York Employee At Will Rule

■ "It is still settled law in New York that absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party" for any reason or no reason. *Mycak v. Honeywell, Inc.*, 953 F.2d 798, 801 (2d Cir.1992), citing *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920 (1987) (citation omitted). Under this rule, limitations on the right of an employer to discharge an at will employee have been narrowly construed by the courts of New York. Specifically, the New York Court of Appeals has held that "absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 89 (1983).

■ Plaintiff recognizes that because her employment was for an unspecified duration that she is presumed to have been an employee at will. However, plaintiff cites *Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), in support of her position that she had an employment contract stemming from Adria's Handbook that limited defendant's right to terminate her employment at will. If the Handbook contains procedures or grounds for termination, the above rule does not apply. *Mycak, supra,* 953 F.2d at 801.

In *Weiner*, the New York Court of Appeals reversed the dismissal below and held that although an employee was hired for an indefinite term, the employee stated a cause of action for wrongful discharge predicated on an alleged breach of an express employment contract where the em-

ployee presented sufficient evidence of an express contractual limitation proscribing the employer's unfettered right to discharge for any reason. The court concluded that language in an employment handbook combined with reference to the handbook in an employment application constituted sufficient evidence of an express contract limiting the employer's otherwise "unfettered right" to discharge the employee. The court identified four factors, alleged by the employee, from which a jury could infer the existence of an express contractual limit on the employer's right to discharge. First, the employee alleged that the employer induced the employee to leave his former employer by assurances of job security. Second, the employee alleged that these assurances were incorporated into an employment contract, application or other document. Third, the employee alleged that he rejected other offers of employment in reliance on these assurances. And fourth, the employee alleged that the employer informed him that he could be discharged only for cause. *Id.*, 57 N.Y.2d at 465–466, 457 N.Y.S.2d at 197, 443 N.E.2d at 445.

■ Plaintiff correctly recognizes, however, that the four factual circumstances that motivated the Court of Appeals decision in *Weiner* are not dispositive of whether an employment contract exists. Rather, as recognized by this and other courts in this Circuit, the totality of the circumstances must be considered to determine the existence of a contractual right limiting the employer's right to discharge. *See, Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 853 (2d Cir.1985); *Sabatowski v. Fisher Price Toys*, 763 F.Supp. 705, 710 (W.D.N.Y.1991); *Gmora v. State Farm Mut. Auto. Ins. Co.*, 709 F.Supp. 337, 340 (E.D.N.Y.), *aff'd*, 888 F.2d 1376 (2d Cir. 1989).

Before considering whether the circumstances of plaintiff's employment limited defendant's right to terminate her at will, this Court emphasizes that "the resoluteness with which the New York Court of Appeals has reaffirmed the 'at will' rule indicates that exceptions to the rule are

discouraged." *Arledge, supra,* 948 F.2d at 848. This is reflected by the requirement in the decisions since *Weiner,* that an employee sustain the "explicit and difficult pleading burden" of showing the existence of an express contractual limitation on the employer's right to discharge at will. As stated in *Murphy* and *Sabetay:*

> In the context of such employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of the right of termination ... to imply such a limitation from the existence of an unrestricted right would be internally inconsistent.

*Sabetay, supra,* 69 N.Y.2d at 335–336, 514 N.Y.S.2d at 212–213, 506 N.E.2d at 922, citing *Murphy, supra,* 58 N.Y.2d at 304–305, 461 N.Y.S.2d at 237, 448 N.E.2d at 237. Applying this rationale, the New York Court of Appeals in both cases proceeded to find that an employee failed to state a claim for wrongful discharge because the employee could not establish an express agreement limiting the employer's right to discharge at will and accordingly, affirmed the dismissal of the employees' wrongful discharge claims.

Therefore, unless this Court finds sufficient evidence of an express contractual right limiting defendant's otherwise unfettered right to discharge plaintiff, this Court must grant the defendant summary judgment.

### 2. Plaintiff's Evidence Of A Contractual Limitation On Defendant's Right To Discharge

Melnyk relies solely upon Adria's Employee Handbook, specifically pointing to the provisions at E–1–F, E–2–F and E–3–F, to support her claim that a contractual limitation on defendant's right to discharge existed. This Court has thoroughly reviewed the Handbook and finds that it does not limit Adria's unfettered right to terminate Melnyk at will.

■ At E–1–F, the Handbook informs employees that their first three to six months of employment will constitute a probationary period during which they will

be subject to termination if their work does not satisfy company standards. Melnyk argues that she relied on this provision to mean she would not be subject to summary termination after the probationary period. However, to recognize such a limitation would contradict New York's policy against implying contract terms inconsistent with the basic nature of at will employment. Although the Handbook indicates that summary termination can occur during the probationary period, Melnyk's interpretation that summary termination would not occur after this period is not evident in the plain and unambiguous language of the provision. Rather, such meaning is, at best, implied by this provision and the courts of New York have long recognized that implied limitations are no limitation at all.[1] Therefore, contrary to Melnyk's assertion, Adria's statement concerning a probationary period for new employees did not limit its right to discharge her after she completed her probation.

■ Melnyk also relies on provision E–2–F of the Handbook that states:

"It is the policy of Adria Laboratories Inc. to take appropriate corrective action in cases involving misconduct by employees ... The extent of corrective action resulting from infractions shall depend upon the nature and severity of the incident in question, with full consideration given to length of service and the employee's past work record. The scope of possible courses of action by management includes, but is not limited to, oral warnings, written reprimands, suspen-

sions, and terminations. For certain major offenses termination could result from the first occurrence. The accumulation of any three written warnings or other corrective actions during any six month period is cause for discharge."

Based on this provision, Melnyk asserts that there were procedural and substantive limitations on Adria's right to terminate her at will.

First, Melnyk cites provision E–2–F as guaranteeing that "termination could not occur for the first occurrence of an offense not called major" (pl.memo p. 35). Melnyk claims that since the provision provides that termination could result from the occurrence of "major" offenses, the "major" offenses enumerated in provision E–3–F were the only reasons for which summary termination could occur. A similar argument was considered in *Marvin v. Kent Nursing Home*, 153 A.D.2d 553, 544 N.Y.S.2d 210 (2nd Dept.1989). In *Marvin*, the Second Department considered whether a Policy and Procedure Manual that listed grounds for termination and procedures for discipline limited an employer's right to terminate an at will employee. The Manual did not state that termination was limited to the grounds stated or for cause only. The court noted that such a list of grounds for termination should not be considered exhaustive and therefore did not represent express assurance that dismissal could occur for those reasons only. Consequently, the court dismissed the plaintiff's case for failure to establish an express limitation on

1. Although some authority exists that an implied agreement may limit the employer's right to discharge at will, *see Tiranno v. Sears, Roebuck and Co.*, 99 A.D.2d 675, 472 N.Y.S.2d 49 (4th Dept.1984) (the court found a limitation could be implied where an employee handbook stated "[t]he Company may terminate an individual's employment at any time that his/her work ... does not measure up to company standards."), such authority is highly suspect. As the Second Circuit noted in *Wright v. Cayan*, 817 F.2d 999, 1005 (2d Cir.1987), the *Tiranno* rationale is "shaky, to say the least" in light of the Fourth Department's decision not to follow such a rationale in its subsequent decision of *Collins v. Hoselton Datsun, Inc.*, 120 A.D.2d 952, 503 N.Y.S.2d 203 (4th Dept.1986) (the court refused to imply a limitation where the employee

handbook stated "You are assured of steady employment as long as you are performing well"). Furthermore, the weight of New York authority finds that an agreement must be express. *See e.g. Novinger v. Eden Park Health Services, Inc.*, 167 A.D.2d 590, 563 N.Y.S.2d 219, 220 (3rd Dept.1990), *appeal denied*, 77 N.Y.2d 810, 571 N.Y.S.2d 913, 575 N.E.2d 399 (1991) ("... only an express limitation relied on by an employee will create a cause of action for breach of an employment contract") (citations omitted); *Townsend v. Harrison Radiator Div.*, 760 F.Supp. 286, 292 (W.D.N.Y.1991) ("... the *Weiner* reasoning has not been extended by the New York Court of Appeals to embrace an implied contractual limitation on an employer's right to discharge an employee at will ...") (citations omitted).

the employer's right to discharge. Similarly, in *Dickstein v. Del Laboratories, Inc.*, 145 A.D.2d 408, 535 N.Y.S.2d 92, 93 (2d Dept.1988), *appeal denied*, 73 N.Y.2d 709, 540 N.Y.S.2d 1004, 538 N.E.2d 356 (1989), the Second Department held that while a personnel policy enumerated 12 reasons for an employee's dismissal, such a list did not limit the employer's right to discharge only for just and sufficient cause. *See also*, *Novinger v. Eden Park Health Services, Inc.*, 167 A.D.2d 590, 563 N.Y.S.2d 219 (3rd Dept.1990), *appeal denied*, 77 N.Y.2d 810, 571 N.Y.S.2d 913, 575 N.E.2d 399 (1991). Thus, Melnyk has failed to identify an express statement indicating that she could only be dismissed for the "major" offenses listed at E–3–F. Her reliance solely on the language of E–2–F stating that termination "could" occur for "major" offenses is misplaced. At best, this language only implies that termination can not occur for offenses that are not identified as major and, therefore, Melnyk's at will status was not modified by this language. She could be terminated for any or no reason.[2]

■ Melnyk also relies on provision E–2–F to claim that Adria disregarded its procedural limitations by failing to consider her length of service and work record before deciding upon disciplinary action. This claim is similar to one considered by the court in *Gmora, supra*, 709 F.Supp. 337 (E.D.N.Y.1989), *aff'd*, 888 F.2d 1376 (2d Cir.1989), where the plaintiffs alleged their employer failed to adhere to certain safeguards and procedures to be followed prior to dismissal. Specifically, in documented

form the employer had stated that its goal was "employee improvement, not employee dismissal" and that it would "make every reasonable effort to facilitate continued employment." *Id.* at 341. Furthermore, the documents set forth the procedures to be followed when certain enumerated conditions were found. However, the court found the documents to be "devoid of any reference to an express limitation on the employer's right to terminate employees." *Id.* In the absence of such a reference, the court held there could be no restriction on the right of an employer to terminate an at will employee. This reasoning highlights Melnyk's burden in the current case: to establish an express limitation on Adria's right to terminate employees she must point to plain and clear language that states Adria is required to consider her work record and that a favorable work record would necessarily establish a limitation on Adria's right to terminate her. Melnyk has offered no evidence in the form of documented company policy or the treatment of other employees that a good or lengthy history with the company would diminish the severity of disciplinary action taken against an employee charged with misconduct. Although provision E–2–F states that an employee's work record will be considered,[3] there is no language plainly stating that this factor will have any impact on how Adria will respond to suspected misconduct.[4] Because this provision provides no specific guarantee that consideration of a strong work record would have prevented Adria from terminating an employee in Melnyk's position, it constitutes a

2. However, Melnyk has not been dismissed for no reason. Adria determined that she had violated one of the nine major offenses listed in provision E–3–F, "Falsifying any company reports or records." Furthermore, Adria indicated that the decision to terminate Melnyk was also based on her failure to be in the field between 8:00 a.m. and 5:00 p.m. as required by its Pledge of Ethics. While Melnyk admits she was not in the field on the days she was being observed, she denied the falsification of company records charge. Although Melnyk has attempted to explain the charges against her, this Court finds it unnecessary to resolve the factual issue of why Melnyk was terminated in the context of her claim that her employee at will status was modified, since it has already determined that there was no express limit on the bases for which Adria could terminate Melnyk.

3. Provision E–2–F neither implies nor states situations where an employee's work record would not be considered when Adria is deciding upon the corrective action to be taken in cases of employee misconduct.

4. There is no plain and unambiguous language stating the weight to be given to an individual's employment record in disciplinary decisions. Absent this, there is no guarantee that an employee's work history will be given any weight at all. Rather, the fact that it will be given some weight in the determination of corrective action has merely been implied.

statement of general company policy rather than an express limitation on Adria's right to terminate its employees.

The absence of an express requirement to consider and weigh an employee's work record is also evident from Melnyk's lack of evidence that Adria did not consider her work record before terminating her. She has made the naked assertion that if her work history had been considered there is no possible way Adria could have terminated her. If such limitation existed, Melnyk would have been able to identify a clear and precise statement of how an employee's work record is to be weighed and relied on in disciplinary actions as evidence that such a limitation had not been adhered to in her case. However, no such limitation exists and Melnyk has been unable to provide any evidence that her work record was not considered. Therefore, this Court finds there was no express limitation requiring Adria to consider and weigh Melnyk's work record before deciding the corrective action to be taken in response to her misconduct.

■■■ Although plaintiff alleges that she relied on provisions contained in Adria's Employee Handbook in deciding to accept its employment offer, this Court need not resolve the reliance issue. While a finding that plaintiff did not rely on the handbook provisions could be fatal to her claim (*See, Leahy v. Federal Express Corp.,* 609 F.Supp. 668, 672 (E.D.N.Y.1985); *Rizzo v. International Brotherhood of Teamsters, Local 237,* 109 A.D.2d 639, 486 N.Y.S.2d 220, 221 (1st Dept.1985)), in light of the foregoing discussion, the issue of reliance is immaterial because the Handbook provisions cannot be construed to place an express limit on the termination rights of Adria, plaintiff's employer.

Therefore, this Court concludes that there was no contractual limitation on Adria's right to discharge Melnyk at will and Adria is entitled to summary judgment on Melnyk's claim for breach of employment contract.

C. *Plaintiff's Sex and Age Discrimination Claims*

Melnyk, a woman who was 43 years of age at the time of her discharge alleges that she was unlawfully discriminated against on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a); and that these reasons for dismissal also violated § 296 of the Executive Law of New York State.

1. Title VII, ADEA and § 296 Standards

■■■ The United States Supreme Court has formally established the order and allocation of proof in a Title VII disparate treatment employment discrimination case. To prove disparate treatment in violation of Title VII, the plaintiff bears the burden of initially establishing a prima facie case. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–3, 101 S.Ct. 1089, 1093–4, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). By making her prima facie case, plaintiff "creates a presumption that an employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094. The burden then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1817. If the defendant produces a nondiscriminatory basis for its action, the plaintiff must establish by a preponderance of the evidence that the nondiscriminatory reason advanced for her discharge was a pretext for discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir.1991). If plaintiff fails to make this showing, this Court must grant defendant's motion for summary judgment.

■■■ Under the ADEA, each party's respective burdens are the same as in a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d

Cir.1991); *Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir.1991); *Montana v. First Federal Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989). Thus, the burden shifting three-step analysis for Title VII set forth in *McDonnell Douglas* also applies to plaintiff's age discrimination case.

Plaintiff also seeks relief on her age and sex discrimination claims under New York Executive Law § 296. In applying this statute, New York courts have looked to federal cases interpreting federal discrimination statutes "for purposes of determining the elements of a prima facie case and the shifting burdens of proof [sic] in discrimination cases." *Mastrangelo v. Kidder, Peabody and Co., Inc.*, 722 F.Supp. 1126 (S.D.N.Y.1989); *see e.g., Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985); *Ioele v. Alder Press, Inc.*, 145 A.D.2d 29, 536 N.Y.S.2d 1000 (1st Dept. 1989). (Both cases cite *McDonnell Douglas* as having established the applicable standards for an action under Executive Law § 296). Therefore, plaintiff's sex and age discrimination claims under state law are dependent upon the outcome of her claims under Title VII and the ADEA.[5]

### 2. Summary Judgment in Discrimination Claims

The Court of Appeals for the Second Circuit has repeatedly stated that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989) (citations omitted). Disparate treatment claims involve precisely these types of issues that consist of inquiries into an employer's true intent and motivation for employment decisions. As such,

charges of employment discrimination are often difficult to verify because an employer who discriminates is unlikely to leave a "smoking gun" in the form of direct evidence to establish discriminatory intent. *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir.1990). To the contrary, employment discrimination is often accomplished by "discreet manipulation and hidden under a veil of self-declared innocence." *Rosen, supra*, 928 F.2d at 533. As a result, victims of discrimination are usually constrained to rely on the cumulative weight of circumstantial evidence to prove their claims. *Ramseur, supra*, 865 F.2d at 464–465. Such considerations support the conclusion that questions of discriminatory intent will often be impossible to resolve in advance of trial. *See Warren v. Quality Care Service Corp.*, 603 F.Supp. 1174, 1181 (W.D.N.Y.1985). However, a plaintiff is still required to offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (citations omitted). Therefore, cognizant of the difficulties plaintiffs face in establishing discrimination claims, this Court now proceeds to consider whether plaintiff has provided a sufficient factual foundation for her claims.

### 3. Plaintiff's Sex Discrimination Claim

■ In disparate treatment claims involving the discharge of an employee, the Second Circuit has stated that "[t]o establish a prima facie case, the plaintiff must show that he or she: (1) was a member of a protected class; (2) was qualified for the position; (3) was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of discrimination."[6]

---

**5.** Melnyk's claim under New York's Human Rights Law is of significance because it may afford her additional remedies, such as damages for emotional distress, which are not provided for under the ADEA or Civil Rights Act of 1964. However, Section 102 of the 1991 Civil Rights Act now provides for compensatory and punitive damages in Title VII and ADEA cases involving intentional discrimination. Although the retroactivity of such provisions has not yet been settled, it is unnecessary to resolve such an

issue at this time and this Court declines to express any opinion on the matter.

**6.** This is not a rigid inflexible standard. As the Supreme Court has noted, "[t]he facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from the respondent is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas, supra*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

*Rosen, supra,* 928 F.2d at 532, *citing McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824 (citations omitted); *see also Ramseur, supra,* 865 F.2d at 464; *Dister, supra,* 859 F.2d at 1115. Recognizing that "the burden of establishing a prima facie case of disparate treatment is not onerous," *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094, this Court finds that plaintiff has established a prima facie case.

■ As a woman, Melnyk is a member of a protected class and although she resigned from her position it is undisputed that this decision was made in the face of notification that Adria had decided to terminate her employment. Furthermore, based upon Adria's performance reviews of Melnyk contained in the record, it is apparent that she possessed the basic skills to qualify her for the position. In fact, other than a satisfactory level review just prior to her termination, her performance record indicates that she was an outstanding employee (Melnyk exh. A). These facts are sufficient to establish the first three criteria of the prima facie case standard. Therefore, Melnyk's prima facie case hinges on whether the circumstances of her dismissal previously discussed, as well as any additional matters, are sufficient to create an inference of discrimination.

■ The Second Circuit Court of Appeals has stated that "an inference of discrimination may be shown by direct evidence, statistical evidence or circumstantial evidence." *Taggart,* 924 F.2d at 46. Melnyk has shown that Adria replaced her with a newly hired male employee. (Gill exh. P). In *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir.1982), the Fifth Circuit Court of Appeals recognized that in cases involving the discharge of a female employee for misconduct, an inference of sex discrimination is established when an employer has retained a man who engaged in similar conduct or has hired a male replacement. Recognizing that such a standard correctly corresponds to the "de minimis" nature of plaintiff's prima facie burden, this Court finds that Melnyk's showing that she was replaced by a male employee is sufficient to create an inference of sex discrimination and establish her prima facie case.

Contrary to this determination, Adria, relying on *Thomas v. Digital Equipment Corp.,* 880 F.2d 1486, 1489–90 (1st Cir. 1989), argues Melnyk must show she was "subjected to actions not taken with respect to other [employees]" to establish her prima facie case. Although this and similar standards have been adopted in several Circuits [7], such a position has not been specifically endorsed in the Second Circuit. Furthermore, this Court finds that applying such a standard in the current case would be contrary to the rationale behind the 3–step burden shifting approach the Supreme Court established in *McDonnell Douglas.* [8] This Court, guided by this Cir-

---

**7.** *Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir.1989) (To make a prima facie case plaintiff must show "(a) that [s]he did not violate the work rule, or (b) that [s]he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against [her] were more severe than those enforced against other persons who engaged in similar misconduct."); *Wilmington v. J.I. Case Co.,* 793 F.2d 909, 915 (8th Cir.1986). (To establish a prima facie case in a race discrimination case, the plaintiff is required to show "he is a member of a protected class, that he was disciplined, and that the discipline imposed was harsher than that imposed on comparably situated whites"); *Moore v. City of Charlotte,* 754 F.2d 1100, 1105 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985) (A plaintiff claiming disparate disciplinary treatment makes out a prima facie case of discrimination by showing "(1) that the plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that the disciplinary measures enforced against the plaintiff were more severe than those enforced against another person"); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir. 1984) ("A plaintiff makes out a prima facie case of discriminatory discharge if he shows that he was qualified for the job from which he was fired, and that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained" (citations omitted)).

**8.** The value of the *McDonnell Douglas* shifting burden paradigm is that it "sharpen[s] vague allegations of discrimination and flush[es] out the true reasons that prompted an employer's action." *Dister, supra,* 859 F.2d at 1111–1112.

cuit's decisions, refuses to adopt such a requirement.

■ To rebut Melnyk's prima facie case, Adria bears the burden of providing, in clear and reasonably specific form, a legitimate nondiscriminatory reason for its decision to terminate her. This burden merely requires Adria to "produce admissible evidence that would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." *Burdine, supra,* 450 U.S. at 257, 101 S.Ct. at 1096. Adria is not required to prove that its action was indeed lawful.[9] In fulfillment of its burden of production of evidence, Adria states that its decision to terminate Melnyk was based on her violation of Adria's Pledge of Ethics that required her to be at work during business hours (Komenda, ¶ 16; d.memo. p. 17). The record also provides other instances of alleged misconduct, such as falsification of company records, which appear to have factored into Adria's decision to terminate Melnyk. (Gill exh. B & exh. D; Melnyk exh. E). By citing several instances where Melnyk has violated work rules, Adria has satisfied its burden. Thus,

However, the standard suggested by Adria does not involve burden shifting, it would require Melnyk to disprove the legitimate nondiscriminatory reason offered by Adria for her termination as part of her prima facie case. As the Court of Appeals for the Third Circuit recognized, such a requirement "addresses the third phase of the allocation of burdens under *McDonnell Douglas* and *Burdine.*" *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1192 n. 11 (3rd Cir.1989).

Although, as a matter of practicality, plaintiffs who have been dismissed for violating work rules will typically know their employers legitimate reason for dismissing them and will usually attempt to establish their prima facie case by showing they have been treated less favorably than other employees, plaintiffs should not be required to show they were treated less favorably to establish a prima facie case. Such requirements would too rigidly limit the means by which a plaintiff could establish an inference of discrimination. As the Second Circuit Court of Appeals indicated in *Montana, supra,* 869 F.2d at 104, it has tailored the elements of the *McDonnell Douglas* prima facie case so that in a nonreduction-in-force case a plaintiff need only show that she was a member of a protected class, qualified for the job and that her discharge occurred under circumstances which

the presumption arising from the establishment of the prima facie case "drops from the case" and "the factual inquiry proceeds to a new level of specificity." *Burdine, supra,* 450 U.S. at 255, 101 S.Ct. at 1094.

At this point Melnyk bears the burden to establish, by a preponderance of the evidence, that the proffered reasons were not the true reasons for her discharge. She may satisfy this burden and establish pretext "either directly by persuading the court that a discriminatory intent more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.,* 450 U.S. at 256, 101 S.Ct. at 1095; *see Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 160–161 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991) ("It is enough for plaintiff to show that the articulated reasons were not the true reasons for defendant's actions" (citations omitted)).[10]

■ As indirect evidence of pretext Melnyk relies on alleged "inconsistencies and implausibilities" in Adria's proffered reasons for her discharge. *See Dister, supra,* 859 F.2d at 1116, *citing Sobra v.*

give rise to an inference of discrimination. The flexibility inherent in this approach is that there is no limitation on the means by which a plaintiff can establish an inference of discrimination. Thus, to adopt the approach advocated by Adria would be contrary to the flexibility this Circuit affords plaintiffs in establishing a prima facie case.

9. The burden on defendant is one of "production." Therefore, the defendant must merely provide evidence that plaintiff was terminated for a legitimate nondiscriminatory reason, but it is unnecessary that the defendant "persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

10. In Title VII actions, it is important to recognize that the terms "direct" and "indirect" evidence are usually not used in reference to their ordinary evidentiary meaning. In most instances, the terms "direct" and "indirect" are used in reference to the quality of evidence introduced. However, in the discrimination context these terms refer to "the manner in which the plaintiff proves his case." *See Tyler v. Bethlehem Steel Corporation,* 958 F.2d 1176, 1185 (2d Cir. 1992), *petition for cert. filed* (U.S. Jun. 8, 1992) (No. 91–1975).

*Pennsylvania Drilling Co., Inc.*, 821 F.2d 200, 203 (3rd Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988). Melnyk claims that Adria's decision to terminate her employment could not plausibly be based on the fact that she was at her home during business hours on October 5 and 6, 1987 because Komenda implicitly told her that she was allowed her to use her home as a business office. She asserts that an understanding existed because Komenda knew that she was using her home as an office, but never warned her that such conduct was not permitted. As such, Melnyk concludes that Adria's reliance on such conduct to dismiss her must be pretextual. However, these assertions are unsupported by any other evidence in the record. Moreover, Adria provides strong evidence to rebut such a claim. Not only does the plain language of its Pledge of Ethics indicate that employees are to be in the field during business hours, Adria's records show that Komenda warned Melnyk about this type of misconduct in June of 1987. A "litigant opposing summary judgment ... 'may not rest upon mere conclusory allegation or denials' as a vehicle for obtaining a trial ... [but] [r]ather ... must bring to the district court's attention some affirmative indication that his version of the relevant events is not fanciful." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting, *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, Melnyk's unsupported claim that it was implausible to dismiss her for being in her home during business hours because she had been assured that such activity was permitted is simply insufficient to satisfy her burden of establishing pretext.

█ Melnyk also asserts that inconsistencies in the reasons Adria has offered for terminating her demonstrate pretext. In its interrogatory answers, Adria identified three reasons for terminating Melnyk's employment: (1) her failure to go to work as required on October 5 and 6, 1987 and her failure to report her absence to her supervisor; (2) the fact that she was not making sales calls she claimed she was making; and (3) she had inappropriate expense reimbursement requests. However, Komenda, during his deposition testimony, only identified Melnyk's failure to go to work as the reason he recommended her termination. Based on this alleged inconsistency Melnyk claims to have established Adria's proffered reasons for terminating her are mere pretext. However, this Court refuses to adopt such a conclusion. Komenda was merely one of many individuals involved in the decision to terminate Melnyk. Furthermore, as a District Sales Manager he did not have authority to terminate Melnyk's employment. He could only recommend it. Finally, it is clear from this record that the decision to terminate Melnyk was initiated by Komenda's recommendation, but only after extensive discussions between various upper level employees at Adria. (Gill exh A p. 10–11; Gill exh O p. 24); As plaintiff concedes, "the decision to terminate Melnyk was made by consensus at high levels of Adria." (pl.reply p. 2). Under these circumstances, Komenda may have reasonably had his own understanding of why Melnyk was terminated. Therefore "[v]iewing the evidence in the light most favorable to plaintiff, there are no material inconsistencies [or implausibilities] that might cause a reasonable jury to doubt" Adria's justification for discharging Melnyk. *Dister, supra*, 859 F.2d at 1116. Thus, the evidence Melnyk relies on to establish pretext indirectly is insufficient to meet her burden of proof, and this Court now considers whether she has satisfied that burden through direct evidence.[11]

11. There is one additional piece of indirect evidence: although Adria's records establish that the decision to terminate Melnyk was made on October 18, 1987, Komenda spent October 21 and 22, 1987 making sales calls with Melnyk for the purpose of conducting a performance review. This raises a reasonable question: Why would Adria spend two days evaluating the performance of an employee whom it had already decided to fire? Furthermore, it is suspiciously convenient for Adria that Melnyk's performance at this time was below Adria's standards for the first time since she began working for the company in 1984. However, the inference that could be drawn from such conduct is that Adria sought to reinforce its justification for terminat-

■ Turning to direct proof of pretext, Melnyk claims that Adria's prior treatment of male employees demonstrates that disciplinary procedures have been applied unevenly towards her. She relies on the treatment of six male employees who left Adria for disciplinary reasons during the term of her employment and were given certain procedural protections not afforded to her. However, differences in treatment are only probative on the question of discrimination if such individuals are similarly situated to the plaintiff. Furthermore, plaintiff bears the burden of establishing similarity between her situation and those of the other employees she claims received preferential treatment; it is not incumbent on Adria to disprove their similarity. *See,* *Tate v. Weyerhaeuser Co.,* 723 F.2d 598, 603 (8th Cir.1983), *cert. denied,* 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984); *Williams v. Casey,* 691 F.Supp. 760, 767 (S.D.N.Y.1988). Therefore, this Court must determine whether Melnyk has established that such employees were similarly situated before proceeding to the question of whether they were treated preferentially.

■ Recognizing that Adria is not burdened with having to disprove similarity, the first point to address is Adria's broad claim that Melnyk was not similarly situated with the six male employees she references because Edward Jacobs was the Director of Oncology Sales at Adria when these male employees were terminated. Melnyk was dismissed when Mitro held that position. Adria cites *Jones v. Gerwens,* 874 F.2d 1534, 1541 (11th Cir.1989),

as establishing the rule that "disciplinary measures undertaken by different supervisors may not be comparable for the purposes of Title VII analysis." However, it is not apparent that the *Jones* Court intended such a rule to be rigid and inflexible. Therefore, rather than dismiss the circumstances of these six employees from Melnyk as per se dissimilar, this Court shall consider the management change in determining the probative value of the comparison between the Melnyk and the six male employees. As the court stated in *Cooper v. City of North Olmsted,* 795 F.2d 1265, 1271 (6th Cir.1986), "a change in managers is not a defense to claims of race or sex discrimination, it [merely] suggest[s] a basis other than race or sex for the difference in treatment received by two employees."

Relying on its lack of a documented company policy regarding termination, Adria claims that the treatment of Melnyk merely reflects Mitro's approach to terminating sales representatives who have engaged in misconduct. (Mitro ¶¶ 12, 13). But, as the first person terminated by Mitro, Melnyk is in a unique position because there is no evidence to establish Mitro's termination policy, if any, before he discharged her. Adria is only able to demonstrate how Mitro terminated other employees after Melnyk. Furthermore, Mitro's treatment of employees after Melnyk must be weighed cautiously because Mitro did not have occasion to dismiss another sales representative until three months after he was notified that Melnyk had initiated a wrongful discharge suit against Adria.[12] As such, he may have recognized that he had treated

---

ing Melnyk. It would be unreasonable to conclude that such evidence, without more, establishes that Adria's proffered reason for terminating Melnyk was merely pretextual. As such, this evidence is of questionable relevance to the question of pretext. Furthermore, Adria has offered an explanation for this conduct. Adria claims that this performance evaluation was a consequence of a decision to retain Melnyk for a month after the decision to terminate her was made because of an ongoing investigation by the New York State Attorney General of one of her clients. Because she was to be employed for another month, Adria asserts that it merely proceeded with the evaluation because it was regularly scheduled. (RKomenda ¶ 9). Based on low relevance and Adria's explanation for

the conduct, this Court considers this evidence to be of no probative value to the question of pretext.

**12.** Melnyk was terminated on November 17, 1987. On June 1, 1988 she filed a charge of age and sex discrimination against Adria with the Equal Employment Opportunity Commission (EEOC) at its local Buffalo office. (Complaint ¶ 48). Therefore, pursuant to 42 U.S.C. § 2000e–5(b), EEOC notified Adria of this charge within 10 days of its filing. However, Mitro did not dismiss another employee until September 1, 1988 when he terminated Mark Pilson for falsifying expense reports. (Mitro exh. A)

Melnyk unfairly and decided to establish a pattern of conduct to which his treatment of Melnyk would conform. Although this Court does not find that Mitro was so motivated, the reasonable possibility that he may have been weighs against ignoring evidence of the treatment of the six male employees simply because they were dismissed under a different supervisor.

Further, other than Mitro replacing Jacobs, there were no changes in Adria's supervisory personnel responsible for investigating and responding to employee misconduct. The other Adria personnel, Pettit, Rohn, Komenda and Wolf, who played a role in deciding the disciplinary action to be taken against employees, held the same positions with Adria when the six male employees were dismissed from the company as when Melnyk was dismissed. Because all but one of the individuals involved in making termination decisions had not changed and because there is a lack of evidence to establish that Mitro had a different policy for terminating employees than Jacobs at the time Mitro discharged Melnyk, this Court refuses to conclude that the six male employees were terminated under such different circumstances that their treatment has no probative value to the question of whether Melnyk was treated unequally. Therefore, it is necessary to consider whether the other circumstances surrounding the discharge of the six male employees were sufficiently similar to Melnyk's termination as to justify a comparison of the process they received.

This remaining consideration of similarity requires an individualized assessment of the circumstances under which each male employee was terminated. The first employee to be considered is Leon Arouth, a District Manager, who was notified by letter on November 20, 1985, that he was being terminated for use of foul language and making sexual advances toward a female job applicant during her interview. (Gill exh E). Because of Arouth's position as District Manager at Adria and the nature of his misconduct, it would be inappropriate to compare the process he was given to that of Melnyk.

The circumstances of Melnyk's termination are also distinguishable from those of Gerald Albrecht, who resigned on May 10, 1985. Although he was also a sales representative, the reason he left Adria is not entirely clear from this record. It appears that he may have resigned in lieu of discharge for participating in an employee training program with another company. (Gill exh J). However, Mitro has asserted that Albrecht left his position voluntarily because of poor sales performance. (Mitro ¶ 6). Despite this factual dispute, neither reason for termination is sufficiently similar to the reasons for Melnyk's termination as to warrant a comparison of the manner in which Adria dealt with each individual.

On the other hand, Roy Hawkins III was a sales representative who was notified of his termination by letter on June 25, 1985. Like Melnyk he was terminated for being absent from his territory during business hours, but his situation is distinguishable from Melnyk's because he was a probationary employee with Adria at the time he was terminated. (Gill exh. G). However, his probationary status does not justify the conclusion that Adria's treatment of him is of no value to the present action. Probationary periods are valuable to companies because they make it easier for them to "weed out" or eliminate undesirable employees. *See, e.g., Farmer v. Colorado and Southern R.R. Co.*, 723 F.2d 766, 767 (10th Cir.1983). Melnyk argues that as a non-probationary employee, she should have been afforded equal if not greater procedural protection than Hawkins. Nevertheless, despite Hawkins' probationary status, he was given a precise list of the charges against him and five days to respond with an explanation for his conduct. In contrast, at the time of her termination Melnyk was neither given a precise list of the charges against her or an opportunity to challenge the grounds for her termination.

The remaining three employees all were sales representatives like Melnyk. Of these, Mike Riley was terminated on September 26, 1985, because of charges that he had falsified records for reimbursement purposes and failed to keep accurate sales

calls records. (Gill exh. I). Another, Phillip Constatin, was terminated by letter on March 27, 1986, for failing to turn in call cards and for filing late weekly reports. (Gill exh. F). In comparing the similarity of their misconduct to that of plaintiff herein, precise equivalence in culpability is not required; all that is necessary is that the employees were involved in acts of comparable seriousness against the employer. *Cf. McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 2580 n. 11, 49 L.Ed.2d 493 (1976). Adopting such an approach, this Court concludes that the conduct that formed the basis for Adria's decision to dismiss these two individuals is similar to that relied on for Melnyk's dismissal in the sense that all the violations involved abuses that indicated the employees had not been performing their respective jobs. Despite this similarity, both male employees were given greater procedural protections than Melnyk before either's termination became final. Specifically, Riley was given a notice that he should come forward and explain his misconduct. Although he was eventually terminated, the letter that apprised him of his termination indicated that he had a right to appeal the decision. Constatin was also given a written warning concerning his misconduct. Furthermore, upon being notified of his termination he was given five days in which he could respond to the charges against him. As with Hawkins and in contrast to these two employees, Melnyk was neither given a clear explanation of the reasons for her termination or an opportunity to respond to the charges. This disparity reflects that Melnyk was afforded less process than the similarly situated males.

Keith Patterson, the sixth and final employee to be considered, was terminated on April 22, 1986, under circumstances almost identical to those of Melnyk. Like Melnyk, he was put under surveillance for two days, during which time he never left his house during business hours. Furthermore, he falsified reports claiming to have made numerous calls during that time. Unlike in the investigation of Melnyk, Adria made the effort to contact the doctors Patterson claimed to have visited in order to verify that his call reports were inaccurate and it sent Patterson a letter notifying him of his termination with a provision providing him with five days in which to reply. If he could not "provide an adequate explanation, [he would] be terminated as indicated." (Gill exh H). Thus, Patterson, was afforded two procedural protections Melnyk was not: (1) the benefit of having the charges against him verified; and (2) an opportunity to respond to the charges.

Based on the foregoing and despite the change in management, this Court concludes that Adria's treatment of Hawkins, Riley, Constatin and Patterson occurred under substantially similar circumstances so as to have probative value on the question of whether Melnyk was discriminated against. Not only were these men afforded greater procedural protections, Adria's treatment of them also reflects a standardized policy of informing employees of the specific charges against them as well as providing them an opportunity to explain instances of misconduct before termination. Based upon this evidence, this Court concludes that Melnyk has made a sufficient showing to establish a material issue of fact as to whether Adria discriminated against her based upon her sex. Therefore, this Court denies defendant's motion for summary judgment on plaintiff's sex discrimination claims under Title VII and New York's Executive Law. Likewise, the existence of a material issue of fact also leads this Court to deny plaintiff's cross-motion for summary judgment on the same.

### 4. Plaintiff's Age Discrimination Claim

As previously discussed, the standards for establishing age discrimination are the same as sex discrimination. Thus, in considering Melnyk's sex discrimination claim this Court in discussions herein has already determined that Melnyk has satisfied the first three elements of her prima facie case. In attempting to establish the fourth element that her termination occurred under circumstances giving rise to an infer-

ence of age discrimination, Melnyk relies on the fact that she was replaced by a younger employee.

 When an employee, such as Melnyk, is within the protected group, over 40 years of age, her termination and subsequent replacement by a younger employee normally gives rise to an inference of age discrimination. 29 U.S.C. § 631(a). However, in Melnyk's case the inference is much weaker because she was hired at age 39. Without additional evidence, it is difficult to justify a conclusion of age discrimination when Adria hired Melnyk just one year prior to her entry into the protected class. Therefore, this Court doubts that Melnyk has made her prima facie case. However, even assuming that plaintiff has offered sufficient evidence to defeat summary judgment at the prima facie stage, plaintiff has provided no credible evidence to demonstrate that defendant's proffered legitimate, nondiscriminatory reasons for terminating her employment are mere pretext for age discrimination.

 In deciding plaintiff's sex discrimination claim, this Court has already determined that plaintiff's indirect evidence is insufficient to establish pretext. Therefore, plaintiff's age discrimination claim is reduced to a reliance on one piece of direct evidence that Adria's decision to terminate her was motivated by her age: a statement she heard Komenda make to a pharmacist that Adria was looking for a "young and energetic" sales representative to take control of its Syracuse territory. However, this isolated statement, which was not directed at plaintiff, does not satisfy plaintiff's burden. Cases have consistently held that isolated and ambiguous statements are insufficient to support a finding of age discrimination. *See e.g. Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990) ("stray remarks" insufficient to establish discrimination); *Gagné v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989) (isolated remarks by plaintiff's supervisor that he "needed younger blood" insufficient to create issue of material fact to defeat summary judgment motion). By itself, Komenda's statement is of "de minimis" probative value and consequently, plaintiff has failed to meet her burden of establishing by a preponderance of the evidence that Adria's reasons for terminating her were mere pretext for age discrimination.

Therefore, this Court grants defendant's motion for summary judgment on plaintiff's claims of age discrimination under the ADEA and New York's Executive Law, as well as denies plaintiff's cross-motion for summary judgment on the same.

### D. *Plaintiff's Demand for Jury Trial*

Defendant disputes whether plaintiff has a right to jury trial with respect to her remaining sex discrimination claim under Title VII. Absent more precise briefing on this issue or pronouncement from the Second Circuit, this Court defers decision of the matter in view of the unsettled retroactivity of the Civil Rights Act of 1991 wherein Congress established the right of plaintiffs in Title VII cases to jury trials. *See Tyler v. Bethlehem Steel Corporation*, 958 F.2d 1176, 1181 (2d Cir.1992).

### CONCLUSION

For the reasons set forth above, this Court grants defendant Adria's motion for summary judgment on plaintiff's breach of employment contract claim and age discrimination claims, and denies defendant's motion for summary judgment on plaintiff's sex discrimination claim. Furthermore, this Court denies plaintiff's cross motions on her age and sex discrimination claims.

### ORDER

IT HEREBY IS ORDERED, that defendant's motion for summary judgment on plaintiff's breach of employment contract claim is GRANTED.

FURTHER, that defendant's motion for summary judgment on plaintiff's age discrimination claims under the ADEA and § 296 of the New York Executive Law is GRANTED.

FURTHER, that defendant's motion for summary judgment on plaintiff's sex dis-

crimination claim under Title VII and § 296 of the New York Executive Law is DE-NIED.

FURTHER, that plaintiff's cross-motion for summary judgment on her sex discrimination claim under Title VII and § 296 of the New York Executive Law is DENIED.

FURTHER, that plaintiff's cross-motion for summary judgment on her age discrimination claims under the ADEA and § 296 of the New York Executive Law is DE-NIED.

FURTHER, that the parties shall meet with this Court on July 17, 1992, at 9:00 a.m. in Part IV, Mahoney State Office Building, 65 Court Street, Buffalo, New York for a status conference.

SO ORDERED.